IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GENERAL INSURANCE COMPANY OF AMERICA,**

       **Plaintiff,**

  **v.**                                       **CIVIL NO. 1:24-CV-49**
                                                           **(KLEEH)**

**BERNARD BOSSIO,**

       **Defendant.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]**

Pending before the Court is Plaintiff's motion for judgment on the pleadings. For the reasons discussed herein, the motion is **GRANTED** [ECF No. 10].

    **I.**    **INTRODUCTION AND PROCEDURAL HISTORY**

Defendant Bernard Bossio ("Bossio") is a landlord insured by Plaintiff General Insurance Company of America ("General Insurance"). General Insurance seeks a declaration by the Court that no additional proceeds are owed to Bossio under the applicable policy. On May 1, 2024, General Insurance filed the complaint, and on June 25, 2024, Bossio filed an answer. On October 28, 2024, General Insurance moved for judgment on the pleadings, and on January 15, 2025, the Court held a hearing on the motion. The motion is fully briefed and ripe for review.

## II.  FACTS

### The Policy

Bossio is the named insured on a Landlord Protection insurance policy issued by General Insurance (the "Policy"). Compl., ECF No. 1, at ¶ 5. The Policy has a Described Location of 537 Milford Street, Morgantown, West Virginia 26505-3340 (the "Property"). Id. ¶ 6; Policy, ECF No. 1-2, at GI 000002. "Coverage A" within the Policy provides coverage for "the dwelling on the Described Location . . . , used principally for dwelling purposes[.]" Compl., ECF No. 1, at ¶ 8; Policy, ECF No. 1-2, at GI 000013. Coverage A only applies to "accidental direct physical loss" to the Property. Compl., ECF No. 1, at ¶ 9; Policy, ECF No. 1-2, at GI 000018. For a covered Coverage A loss, real property losses are settled, without deduction for depreciation, as follows:

> (1) In the event of total loss, the limit of liability under this policy applying to such real property;
>
> (2) In the event of partial loss, the total amount of such partial loss, but not to exceed the limit of liability under the policy applying to such real property.

Policy, ECF No. 1-2, at GI 000029. The Policy has a Coverage A dwelling limit of $168,300.00 and a deductible of $1,000.00. Compl., ECF No. 1, at ¶ 11; Policy, ECF No. 1-2, at GI 000009.

MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]

"Coverage D" under the Policy provides coverage for "Loss of Rent, meaning loss of rental income to [Bossio] from that part of the Described Location rented at the time of the loss, less any expenses that do not continue while that part of the Described Location rented is uninhabitable." Compl., ECF No. 1, at ¶ 12; Policy, ECF No. 1-2, at GI 000015.  Loss of Rent coverage under Coverage D applies "[i]f a loss to property described in Coverage A . . . makes the Described Location uninhabitable for its normal use[.]" Policy, ECF No. 1-2, at GI 000015.  Payment for Coverage D Loss of Rent coverage "will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental but not to exceed 12 months." Compl., ECF No. 1, at ¶ 13; Policy, ECF No. 1-2, at GI 000015.  The Policy has a Coverage D limit of $16,830.00.  Compl., ECF No. 1, at ¶ 14; Policy, ECF No. 1-2, at GI 000009.

The Policy provides the following regarding appraisals, in the event that there is a dispute as to the value of the Property or the amount of loss:

> Appraisal.  If you and we fail to agree on the value of the property or the amount of loss, then on written demand of either, each party will choose a competent and impartial appraiser and notify the other of the appraiser chosen within 20 days of such demand.  The two appraisers will choose a competent and impartial umpire.  If they cannot agree upon an umpire within 15 days,

> either may request that choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers shall then appraise the loss, stating the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed by any two will be binding.
>
> Each party will:
>
> a. pay its own appraiser; and
>
> b. bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

Policy, ECF No. 1-2, at GI 000029.

### The Claim

On or about January 17, 2024, Bossio submitted a claim under the Policy (the "Claim"). Compl., ECF No. 1, at ¶ 15. The Claim was the result of a homicide at the Property on January 16, 2024, in which the tenant of the Property was killed. Id. ¶ 16. General Insurance investigated the claim and determined that the physical damage to the Property within the Claim constituted covered Coverage A damage. Id. ¶ 17. Bossio provided documentation to General Insurance that it would cost $69,242.87 to replace or repair the physical damage to the Property as a result of the Claim. Id. ¶ 18. General Insurance paid Bossio $67,749.99 for the physical damage to the Property, and it advised Bossio that an

additional payment of $492.88 would be issued when damages from debris removal had been incurred. Id. ¶ 19. General Insurance asserts that after applying the Policy's deductible, it has paid (or agreed to pay) the full amount claimed by Bossio for physical damage to the Property. Id. ¶ 20. Bossio indicated to General Insurance that his loss of rental income is $1,075.00 per month. Id. ¶ 21. General Insurance issued a loss of rental income payment to Bossio totaling $4,854.88, which included $554.88 for 16 days in January 2024 and $1,075.00 per month for February 2024 through May 2024. Id. ¶ 22.

### The Dispute

Bossio, through counsel, advised General Insurance that he believes the Property is a "total property loss," that "there is no reasonable person who would agree to rent [the] home or to purchase [the] home," and that "for all practical purposes the house has been damaged beyond repair and is uninhabitable." Id. ¶ 23. Bossio has, therefore, demanded that General Insurance pay him "the fair market value for the house, pay for the house to be destroyed and the debris removed and pay him for the lost rent from February 1, 2024, until the time in which [General Insurance] pays him for [the] house." Id. ¶ 24. General Insurance advised Bossio that no additional proceeds are owed under the Policy. Id. ¶ 25. General Insurance does not believe that the Property is a

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]**

"total loss" or that General Insurance owes any additional Coverage A proceeds based on a perceived inability to rent the Property. Id. ¶ 26. General Insurance also does not believe that additional Coverage D proceeds are owed. Id. ¶ 27.

General Insurance seeks the following declaration from the Court, in addition to any other relief the Court deems appropriate:

(1) That General Insurance owes no Coverage A proceeds to Bossio beyond the amounts it has already paid or agreed to pay; and

(2) That General Insurance owes no Coverage D proceeds to Bossio beyond the amount it has already paid.

General Insurance asserts that Bossio admitted in his Answer that General Insurance paid all damages related to direct physical loss:

> Complaint, Par. 20: "After applying the Policy's $1,000 deductible, General Insurance has paid, or agreed to pay, the full amount claimed by Mr. Bossio for physical damage to the Property."
>
> Answer: "The Defendant admits the allegations contained in paragraphs 15-22 of the Complaint for Declaratory Judgment."

### III. STANDARD OF REVIEW

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) seeks to dispose of a

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]**

case on the basis of the underlying substantive merits of the parties' claims as they are revealed in the formal pleadings." Weber v. Wells Fargo Home Equity Asset-Backed Securities 2004-2, No. 3:20-CV-48, 2022 WL 740763, at *3 (N.D.W. Va. Feb. 18, 2022) (Bailey, J.) (citation omitted). In deciding a motion for judgment on the pleadings, the Court must draw all reasonable factual inferences from the pleadings in favor of the non-moving party, and the Court may only grant the motion if it appears certain that the non-moving party cannot prove any set of facts in support of his position. Id.; Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014).

## IV. DISCUSSION

General Insurance asserts – and the Court agrees- that a legal question is presented here: whether the reputational damage causing Bossio's inability to rent the Property can constitute a direct physical loss and render the Property a total loss. General Insurance contends that it cannot. Bossio argues that the dispute is factual and that the parties should hire appraisers because they disagree as to the amount of loss at issue. The Court agrees with General Insurance's position and finds that reputational damage cannot, as a matter of law, constitute a direct physical loss or render a property a total loss.

Case 1:24-cv-00049-TSK   Document 19   Filed 07/07/25   Page 8 of 13 PageID #: 259

GEN. INS. CO. V. BOSSIO                                                      1:24-CV-49
MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]

**A.   General Insurance owes no additional Coverage A funds because reputational damage cannot constitute a direct physical loss or render the Property a total loss.**

Under West Virginia law, an insurance policy is a contract, and "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. Pt. 1, Tennant v. Smallwood, 568 S.E.2d 10 (W. Va. 2002). For nearly a century, the Supreme Court of Appeals of West Virginia has recognized that "[p]olicies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties." Syl., Kanawha Inv. Co. v. Hartford Steam Boiler Inspection and Ins. Co., 149 S.E. 605 (W. Va. 1929).

"Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., Keffer v. Prudential Ins. Co. of Am., 172 S.E.2d 714 (W. Va. 1970); see also Syl. Pt. 1, Murray v. State Farm Fire and Cas. Co., 509 S.E.2d 1 (W. Va. 1998) (stating that a court interpreting an insurance policy should give the language of the policy "its plain, ordinary meaning"). A policy's language is only ambiguous when it is "reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning[.]" Syl.

Case 1:24-cv-00049-TSK   Document 19   Filed 07/07/25   Page 9 of 13 PageID #: 260

GEN. INS. CO. V. BOSSIO                                    1:24-CV-49
**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]**

Pt. 2, Murray, 509 S.E.2d 1.  More succinctly, "a court should read policy provisions to avoid ambiguities and not torture language to create them."  Payne v. Weston, 466 S.E.2d 161, 166 (W. Va. 1995).

As discussed above, under the Policy, Coverage A applies only to accidental "direct physical loss" to the Property.  The United States Court of Appeals for the Fourth Circuit, when interpreting a direct physical loss provision in an insurance policy under West Virginia law, has held that "with reference to a defined premises, the plain understanding of the terms 'physical loss' or 'physical damage' is material destruction or material harm."  Uncork & Create LLC v. Cincinnati Ins. Co., 27 F.4th 926, 932 (4th Cir. 2022).  In reaching this conclusion, the court gave the words in the insurance policy their ordinary meaning:

> [W]e observe that the word "accidental" means "occurring by chance."  Webster's Third New Int'l Dictionary 11 (2002). . . . [T]he word "physical" means "relating to natural or material things" and the word "loss" means "the state of fact of being destroyed or placed beyond recovery: destruction, ruin." Id. at 1338, 1706. Finally, the word "damage" in this context means an "injury or harm . . . to property." Id. at 571. Thus, with reference to a defined premises, the plain understanding of the terms "physical loss" or "physical damage" is material destruction or material harm.

Id. at 931–32.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]**

Uncork is aligned with other decisions aligning "physical loss" with actual and tangible destruction or alteration to the insured property. See, e.g., GPL Enter., LLC v. Certain Underwriters at Lloyd's, 276 A.3d 75, 83-85 (Md. Ct. Spec. App. 2022) ("Unlike a fire or an earthquake, . . . [there was] no tangible, physical impact on GPL's restaurant or the property inside the restaurant."); Tapestry, Inc. v. Factory Mut. Ins. Co., 286 A.3d 1044, 1055 (Md. 2022) (stating that "physical loss or damage" to property requires "tangible, concrete, and material harm to the property or a deprivation of possession of the property"); Out West Rest. Grp., Inc. v. Affiliated FM Ins. Co., 527 F.Supp.3d 1142, 1148 (N.D. Cal. 2021) (direct physical loss requires "distinct, demonstrable, physical alteration of the property"). The United States District Court for the District of Oregon considered whether a building suffered a "direct physical loss" when the insured discovered asbestos in the building. Great Northern Ins. Co v. Benjamin Franklin Fed. Sav. & Loan Ass'n, 793 F.Supp. 259 (D. Or. 1990), aff'd, 953 F.2d 1387 (9th Cir. 1992). It found that "there [was] no evidence . . . of physical loss, direct or otherwise," noting that "[t]he building . . . remained physically intact and undamaged." Id. at 263. The Court stated, "The only loss [was] economic . . . . The inclusion of the terms

Case 1:24-cv-00049-TSK   Document 19   Filed 07/07/25   Page 11 of 13 PageID #: 262

**GEN. INS. CO. V. BOSSIO**                                          **1:24-CV-49**
**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]**

'direct' and 'physical' could have only been intended to exclude indirect, nonphysical losses." Id.

Over 100 years ago, the Supreme Court of Appeals of West Virginia, in reviewing a fire insurance policy, discussed the meaning of "total loss":

> There is a total loss where the building is substantially destroyed, though some of the walls still stand. There is a total loss where the property has lost the character in which it was insured, and rendered useless for that purpose, and its remains are practically useless for repair or reconstruction.

Hinkle v. North River Ins. Co., 75 S.E. 54, 55 (W. Va. 1912). While the "total loss" standard does not require property to be "utterly destroyed," it must be that the Property's "identity is gone and its remnants cannot be used as a basis for repair or restoration[.]" Syl., Nicholas v. Granite State Fire Ins. Co., 24 S.E.2d 280 (W. Va. 1943).

Based on the well-reasoned case law discussed, the Court must conclude that reputational damage cannot constitute "direct physical loss" under the Policy. Reputational damage is not tangible, concrete, material, or demonstrable. The parties agree that General Insurance has paid, or agreed to pay, the full amount

Case 1:24-cv-00049-TSK   Document 19   Filed 07/07/25   Page 12 of 13 PageID #: 263

GEN. INS. CO. V. BOSSIO                                    1:24-CV-49
MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]

claimed by Bossio for physical damage to the Property.[1] The remaining damage, if any, is damage to the Property's reputation. Accordingly, General Insurance has paid Bossio for all of the "direct physical loss" damages claimed under the Policy. Moreover, as a matter of law, the Property cannot constitute a "total loss" because the Property's remains are not "practically useless for repair or reconstruction." Hinkle, 75 S.E. at 55. General Insurance owes no additional Coverage A payments to Bossio.

**B.   Because Bossio is not entitled to additional Coverage A payments, he is not entitled to additional Coverage D payments.**

As discussed, Loss of Rent coverage under Coverage D applies "[i]f a loss to property described in Coverage A . . . makes the Described Location uninhabitable for its normal use[.]" Policy, ECF No. 1-2, at GI 000015. Payment for Coverage D Loss of Rent coverage "will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental but not to exceed 12 months." Id. General Insurance issued a loss of rental income payment to Bossio totaling $4,854.88, which included $554.88 for 16 days in January 2024 and $1,075.00 per month for February 2024 through May 2024. Id. ¶ 22. Bossio's

---

[1] During the hearing, the Court asked the parties when the Property was restored to its previous physical condition. The parties indicated that the Property has not yet been restored.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 10]**

claim that he is entitled to Loss of Rent coverage through the time when General Insurance treats the Property as a total loss is misplaced because, as the Court has found, Bossio is not entitled to any additional Coverage A payments. Simply, the condition precedent for additional Coverage D benefits being payable has not been met.

### V.   CONCLUSION

For the reasons discussed, the Court **ORDERS** as follows:

- Plaintiff's motion for judgment on the pleadings is **GRANTED** [ECF No. 10];

- General Insurance owes no Coverage A proceeds to Bossio beyond the amounts it has already paid or agreed to pay;

- General Insurance owes no Coverage D proceeds to Bossio beyond the amount it has already paid;

- This case is **STRICKEN** from the Court's active docket; and

- The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: July 7, 2025

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA